1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DEBORAH ANN RODRIGUEZ,                    No.  2:15-cv-0231-CKD

12              Plaintiff,

13        v.                                   ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

20   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

21   ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for

22   summary judgment and grant the Commissioner's cross-motion for summary judgment.

23   I.      BACKGROUND

24        Plaintiff, born March 14, 1967, applied on July 15, 2011 for DIB and on July 18, 2011 for

25   SSI, alleging disability beginning February 2, 2010.  Administrative Transcript ("AT") 184-96.

26   Plaintiff alleged she was unable to work primarily due to back, hand, knee, and wrist pain, hand

27   and foot numbness, diabetes, and obesity.  AT 27, 227, 266-68.  In a decision dated May 29,

28
                                             1

2013, the ALJ determined that plaintiff was not disabled.[1]  AT 21-32**.**  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.
>
> 2.  The claimant has not engaged in substantial gainful activity since February 2, 2010, the alleged onset date.
>
> 3.  The claimant has the following severe impairments: obesity, lumbar spine spondylosis, diabetes, carpal tunnel syndrome, degenerative joint disease of the knees.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes or scaffolds. She can occasionally climbs ramps and stairs, balance, stoop, kneel, crouch, and crawl.

6.  The claimant is capable of performing past relevant work as a store manager.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.  The claimant has not been under a disability, as defined in the Social Security Act, from February 2, 2010, through the date of this decision.

AT 23-31.

II.     ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) failed to describe plaintiff's residual functional capacity ("RFC") on a function-by-function basis; (2) improperly considered the impact of plaintiff's severe impairments of obesity and carpal tunnel syndrome; (3) improperly weighed the medical opinion evidence in the record; (4) improperly found plaintiff's testimony less than fully credible; and (5) improperly discounted the third party report of plaintiff's daughter.

III.    LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

3

1    The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

2    Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

3    conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

4    affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

5    also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

6    administrative findings, or if there is conflicting evidence supporting a finding of either disability

7    or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

8    1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

9    weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

10   IV.    ANALYSIS

11        A.    The ALJ Properly Described Plaintiff's RFC on a Function-by-Function Basis

12        First, plaintiff asserts that the ALJ erred by not describing plaintiff's RFC on a function-

13   by-function basis in violation of Social Security Ruling[2] ("SSR") 96-8p.  This argument is

14   frivolous.

15        Pursuant to SSR 96-8p, "[t]he [ALJ's] RFC assessment must first identify the [claimant's]

16   functional limitations or restrictions and assess his or her work-related abilities on a function-by-

17   function basis . . . .  Only after that may RFC be expressed in terms of the exertional levels of

18   work, sedentary, light, medium, heavy, and very heavy."

19        Here, the ALJ determined that plaintiff had the RFC to perform light work as defined in

20   20 C.F.R. §§ 404.1567(b), 416.967(b)[3] with some additional restrictions regarding postural

---

21   [2] Social Security Rulings "represent precedent final opinions and orders and statements of policy

22   and interpretations that we have adopted."  20 C.F.R. § 402.35(b)(1).  Social Security Rulings are
     "binding on all components of the Social Security Administration."  Heckler v. Edwards, 465

23   U.S. 870, 873 n.3 (1984); cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court

24   defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the
     Act or regulations").

25   [3] Both section 404.1567(b) and section 416.967(b) define the functional requirements of "light

26   work" as follows:

27        Light work involves lifting no more than 20 pounds at a time with frequent lifting
          or carrying of objects weighing up to 10 pounds. Even though the weight lifted
28        may be very little, a job is in this category when it requires a good deal of walking

1   activities that the ALJ clearly described with respect to each individual postural function.  AT 27.

2   Insofar as plaintiff argues that the ALJ's description of plaintiff's RFC as "light" under the

3   relevant regulations is improper, this argument is without merit because those regulations include

4   a clear function-by-function definition of what limitations constitute an ability to perform "light"

5   work and the ALJ's use of this concise way to describe many of plaintiff's functional limitations

6   was in accordance with SSR 96-8p.  See Buckner-Larkin v. Astrue, 450 F. App'x 626, 627 (9th

7   Cir. 2011) (unpublished) ("[I]n accordance with Social Security Ruling 96-8p, the ALJ defined

8   [the claimant's] RFC as 'sedentary,'. . . which includes well-defined function-by-function

9   parameters." (internal citation omitted)); Trofimuk v. Comm'r of Soc. Sec., 2014 WL 794343, at

10  *6 (E.D. Cal. Feb. 27, 2014) (unpublished) ("While the ALJ did not explicitly lay out plaintiff's

11  limitations, her citation to 20 CFR 416.967(c), [the regulation defining 'medium' work], which

12  does state RFC on a function-by-function basis, was functionally equivalent to explaining

13  plaintiff's limitations on a function-by-function basis.").

14       B.       The ALJ did not err in Considering Plaintiff's Obesity and Carpal Tunnel

15                Syndrome

16       Second, plaintiff argues that the ALJ erred in considering the impact of plaintiff's obesity

17  and carpal tunnel syndrome, both of which the ALJ found "severe" at step two of the sequential

18  analysis.

19            1.   *Obesity*

20       With regard to obesity, plaintiff asserts that the ALJ erred in considering this impairment

21  at steps three, four, and five of the analysis.  Specific to step three, plaintiff argues that the ALJ

22  failed to discuss the impact of plaintiff's obesity in determining that plaintiff's impairments did

23  not equal or meet a listing.  However, this argument is without merit because the ALJ clearly

24  stated at step three in his decision that he considered the impact of plaintiff's obesity and

25
26
27
28

or standing, or when it involves sitting most of the time with some pushing and
pulling of arm or leg controls. To be considered capable of performing a full or
wide range of light work, you must have the ability to do substantially all of these
activities. If someone can do light work, we determine that he or she can also do
sedentary work, unless there are additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time.

1  concluded that "there is no evidence that the claimant's obesity affects any body system at a

2  listing severity."  AT 26.  Plaintiff argues that the ALJ did not explain this conclusion in

3  sufficient detail.  However, plaintiff does not in any way assert that she meets a particular listing

4  set forth in 20 CFR Part 404, Subpart P, Appendix 1, let alone show that she satisfies the

5  requirements for such a listing.

6      Plaintiff further contends that plaintiff's weight taken in conjunction with her other

7  impairments would have met the requirements of former listing 9.09.  However, as plaintiff

8  apparently concedes, listing 9.09 is a *former* listing, one which is no longer used by the

9  Commissioner to determine disability.  Effective October 25, 1999, the Section 9.09 listing of

10  impairment with regard to obesity was deleted by the Commissioner.  In doing so, the

11  Commissioner noted:

12      [w]e are deleting listing 9.09, "Obesity," from appendix 1, subpart P of part 404,
        the "Listing of Impairments" (the listings). Although many individuals with
13      obesity are appropriately found "disabled" within the meaning of the Social
        Security Act (the Act), we have determined that the criteria in listing 9.09 were not
14      appropriate indicators of listing-level severity because they did not represent a
        degree of functional limitation that would prevent an individual from engaging in
15      any gainful activity. However, in response to public comments, we are adding
        guidance about evaluating claims for benefits involving obesity to the prefaces of
16      the musculoskeletal, respiratory, and cardiovascular body system listings.

17

18  Hendricks v. Apfel, 2000 WL 174884, at *6, n.8 (E.D. La. Feb. 14, 2000).  Accordingly,

19  plaintiff's argument that the ALJ should have found her disabled at step three because her

20  impairments met the criteria listed in former listing 9.09 is not well taken.

21      Plaintiff argues that when her weight is taken into account, her impairments so clearly met

22  the former listing that she should have been deemed disabled under another, unspecified listing.

23  However, plaintiff vaguely asserts, without any evidentiary proof, that her other diagnoses

24  combine with her obesity to equal an unnamed listed impairment.  This is insufficient to

25  demonstrate that the ALJ's step three findings regarding the impact of plaintiff's obesity were

26  made in error.  See Burch, 400 F.3d at 682-83 (noting that the claimant bears the burden of

27  establishing that his or her impairments meet or equal a listing and finding that the ALJ did not

28  err at step three by not discussing the claimant's obesity where the claimant failed to specify

6

1  which listing she believed she met or equaled and failed to set forth evidence sufficient to show
2  she met a listing).

3      Similarly, plaintiff fails to demonstrate that the ALJ erred in his consideration of her
4  obesity in determining her RFC.  The ALJ stated in his decision that he rendered his RFC
5  determination "after careful consideration of the entire record," which included medical evidence
6  of plaintiff's obesity, and that he had "considered all symptoms and the extent to which these
7  symptoms can reasonably be accepted as consistent with the objective medical evidence and other
8  evidence" when determining plaintiff's RFC.  AT 27.  While the ALJ did not expressly mention
9  plaintiff's obesity when discussing plaintiff's RFC, it is clear from the ALJ's consideration of all
10 of the medical evidence in the record and all of plaintiff's symptoms that the ALJ considered the
11 impact of plaintiff's obesity on her ability to perform basic work related functions.  See
12 Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (stating that the court may draw
13 "specific and legitimate inferences from the ALJ's opinion").

14     Plaintiff asserts, however, that the lack of a discreet discussion of plaintiff's obesity
15 constituted error under the circumstances presented here because the ALJ found plaintiff's
16 obesity to be a "severe" impairment and largely adopted the RFC findings of the consultative
17 examining physician, who plaintiff claims was not permitted to consider obesity when rendering
18 his opinion.  Plaintiff argues that had the ALJ properly considered her obesity, he would
19 necessarily have had to come to an RFC conclusion more limited than that opined by the
20 consultative examining physician since the ALJ had already determined that plaintiff's obesity
21 had a more than minimal impact on her ability to perform work-related function and the
22 examining physician was not allowed to consider the impact of that impairment when giving his
23 RFC opinion.  Plaintiff claims that SSR 96-8p restricted the consultative examiner from
24 considering plaintiff's obesity because it prevents consideration of "body habitus," while SSR 02-
25 01p required the ALJ to consider that impairment when determining plaintiff's RFC.  However,
26 plaintiff's reliance on these SSRs to support her argument is misguided.  The limitation regarding
27 consideration of a claimant's "body habitus" reflected in SSR 96-8p specifically relates to a
28 claimant's "natural body build" rather than his or her medically determinable impairments, which

1 would include obesity.  Furthermore, contrary to what plaintiff suggests, nothing within SSR 96-

2 8p requires an examining physician to ignore a claimant's obesity or other medically

3 determinable impairments when providing an RFC opinion.  Here, Dr. Ali, the consultative

4 examining physician, specifically diagnosed plaintiff with obesity as one of her medically

5 determinable impairments and rendered an RFC opinion based on, among other things, that

6 diagnosis.  AT 345.  Accordingly, the ALJ did not disregard the impact of plaintiff's obesity

7 when determining plaintiff's RFC as he assigned "great weight" to Dr. Ali's opinion.

8          The ALJ also properly considered the impact of plaintiff's obesity at steps 4 and 5 because

9 the ALJ based his determinations at those steps on his RFC conclusion, which properly took into

10 account the impact of plaintiff's obesity.  Accordingly, the ALJ did not err at those steps of the

11 analysis with regard to his consideration of plaintiff's obesity.

12                    2.  *Carpal Tunnel Syndrome*

13          With regard to carpal tunnel syndrome, plaintiff argues that the ALJ failed to consider its

14 impact on plaintiff's RFC despite listing it as a "severe" impairment at step two.  However, as

15 noted above with regard to plaintiff's obesity, the ALJ stated in his decision that he considered all

16 of the evidence in the record and all of plaintiff's symptoms when determining her RFC.  AT 27.

17 Furthermore, the ALJ discussed in his decision the evidence in the record demonstrating the

18 diagnosis and treatment plaintiff received for her carpal tunnel syndrome.  AT 23-24.

19 Accordingly, it is clear from the ALJ's decision that he considered plaintiff's carpal tunnel

20 syndrome and its impact on her functioning even if he did not specifically discuss that impairment

21 in detail in his RFC analysis.

22          Plaintiff also appears to assert that the ALJ could not have relied on Dr. Ali's RFC

23 opinion as the basis for his own determination had he properly considered this impairment

24 because Dr. Ali did not diagnose plaintiff with carpal tunnel syndrome.  However, the ALJ was

25 not required to rely solely on Dr. Ali's opinion just because he gave it "great weight" and

26 determined that plaintiff had functional limitations similar to those opined by that physician.  See

27 20 C.F.R. § 404.1527(e)(2) ("Administrative law judges are responsible for reviewing the

28 evidence and making findings of fact and conclusions of law . . . [and] are not bound by any

findings made by State agency medical or psychological consultants."). Therefore, the ALJ did not err in his consideration of plaintiff's carpal tunnel syndrome when determining plaintiff's RFC.

C.      The ALJ Properly Assessed the Medical Opinion Evidence in the Record

Third, plaintiff argues that the ALJ erred by rejecting the treating physician opinions of Dr. Sultan and Dr. Banda.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

////

////

1          1.   *Dr. Sultan*

2              In a treating note dated June 7, 2010, Dr. Sultan opined that plaintiff "is diabetic [and]

3   needs to stay off [her] feet in view of [her] obesity."  AT 317.  On December 14, 2010, Dr. Sultan

4   submitted a pre-printed "Authorization to Release Medical Information" form.  AT 296.  Therein,

5   Dr. Sultan opined that plaintiff had unspecified limitations that affect her ability to work and that

6   she was unable to work.  Id.  Dr. Sultan further opined that the onset date of this condition was

7   February 2, 2010, was both chronic and acute, and was expected to last until February 1, 2011.

8   Id.  Dr. Sultan submitted a similar medical release form on May 2, 2011, which provided the

9   exact same opinion as the form provided on December 14, 2010 with the only difference being

10  that Dr. Sultan opined that plaintiff's condition would be expected to last until May 2, 2012.  AT

11  297.

12             The ALJ "rejected" all of Dr. Sultan's opinions for the following reasons:

13             [T]he statements from Dr. Sultan that the claimant is "unable to work" are not
14             medical opinions and are not entitled to any special weight.  Most significantly,
               however, is the fact that Dr. Sultan's records contain few, if any, objective medical
15             findings to support his conclusions.  Specifically, his treatment records are devoid
               of any description or examination of her joints.  There is no description of her gait
16             or neurovascular status.

17  AT 29 (citations to the record omitted).  These were proper reasons for discounting Dr. Sultan's

18  opinions that were supported by substantial evidence from the record.

19             First, with regard to Dr. Sultan's opinions that plaintiff was unable to perform any work,

20  the ALJ correctly rejected those opinions on the basis that they opined on an issue exclusively

21  reserved to the ALJ's own judgment.  "A treating physician's opinion on the availability of jobs

22  and whether a claimant is disabled are opinions on issues reserved to the Commissioner."  Allen

23  v. Comm'r of Soc. Sec., 498 Fed. App'x 696, 696 (9th Cir. 2012) (unpublished) (citing 20 C.F.R.

24  § 404.1527(d)(1)-(2)).  "A treating source's opinion on issues reserved to the Commissioner can

25  never be entitled to controlling weight or given special significance."  Allen, 498 Fed. App'x at

26  696 (citing SSR 96-5p, 1996 WL 374183 *5).  Accordingly, the ALJ's rejection of Dr. Sultan's

27  opinions that plaintiff could not work was proper.

28

1    Second, the ALJ rejected Dr. Sultan's opinion that plaintiff would need to stay off her feet

2    as a result of her impairments on the basis that this opinion was conclusory and unsupported by

3    Dr. Sultan's own treating records.  This was a sufficient reason for entirely discounting Dr.

4    Sultan's opinion that was supported by substantial evidence.  As the ALJ noted in his decision,

5    none of Dr. Sultan's treating notes from both before and during the relevant period provide any

6    objective evidentiary support for the opined restriction that plaintiff stay off her feet.  In

7    particular, Dr. Sultan's treating notes from the relevant period primarily consist of appointments

8    for medication refills and referrals for examination of plaintiff's wrist and hand impairments, and

9    generally do not provide any objective medical evidence showing that plaintiff was unable to

10   stand or walk, or should otherwise stay off her feet.  AT 382-89, 392-98.  Accordingly, the ALJ

11   properly used this lack of objective medical evidence to reject Dr. Sultan's opinion.  Burkhart,

12   856 F.2d at 1339 (upholding ALJ's rejection of treating physician's opinion where "[t]here was

13   no description—either objective or subjective—of medical findings, personal observations or test

14   reports upon which [the treating physician] could have arrived at his conclusion").

15       2.  *Dr. Banda*

16       On January 4, 2013, Dr. Banda submitted a pre-printed medical release form similar to the

17   ones submitted by Dr. Sultan.  AT 440.  Therein, Dr. Banda opined that plaintiff had unspecified

18   limitations that affect her ability to work, that those conditions were chronic, and that she was

19   unable to work for an unspecified period of time.  Id.  On April 4, 2013, Dr. Banda submitted a

20   one-page medical assessment form regarding plaintiff's ability to perform certain work-related

21   physical activities.  AT 442.  Dr. Banda stated in that form that he had diagnosed plaintiff with

22   carpal tunnel syndrome and spinal osteoarthritis based on a physical examination of and an

23   interview with plaintiff, and plaintiff's x-ray reports.  Id.  With regard to work-related functions,

24   Dr. Banda opined that plaintiff was able to occasionally lift up to 2 pounds and frequently up to 1

25   pound.  Id.  He further opined that plaintiff could stand and/or walk a total of zero hours in an 8-

26   hour workday, and could do the same for 5 to 10 minutes at a time without interruption.  Id.  Dr.

27   Banda also opined that plaintiff could sit for a total of 10 to 15 minutes in an 8-hour workday, and

28   could sit for between 2 and 5 minutes without interruption or needing to change position.  Id.  In

addition, he opined that plaintiff could never bend, climb, balance, stoop, crouch, kneel, crawl, reach, handle, feel, push, pull, or perform overhead work.  Id.  He also determined that plaintiff had environmental restrictions from heights, moving machinery, temperature extremes, chemicals, dust, noise, humidity, and vibration.   Id.  Finally, Dr. Banda opined that plaintiff would need additional rest periods more than every 2 hours without specifying how frequently plaintiff would need to take such breaks.  Id.

The ALJ "rejected" both Dr. Banda's January 4, 2013 opinion and April 4, 2013 opinion for the following reasons:

> First his opinion that [the claimant] is unable to work is not a medical opinion as noted above. Second, Dr. Banda's opinion is so extreme, he appears to suggest that the claimant is unable to get out of bed and or function independently, which is inconsistent with her own statements. Third, the record contains no treatment records or examinations from Dr. Banda.  Therefore, no treating or examining relationship has been established to support his opinion.  Fourth, the other clinic records from Dr. Sultan do not support his statements.  Fifth, the previously discussed consultative examination with minimal objective findings is fully inconsistent with Dr. Banda's opinion.  The undersigned further notes that Dr. Banda's opinion is dated the day before the hearing was held, which suggests that it was rendered in an effort to generate evidence for the current appeal.  Moreover, Dr. Banda apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to accept, uncritically as true, most, if not all, of what the claimant reported.  Yet, as discussed elsewhere in this decision, there is reason for questioning the severity of the claimant's subjective complaints.

AT 29 (citations to the record omitted).

Plaintiff argues that the ALJ erred in finding that plaintiff had failed to establish that Dr. Banda was a treating physician because the record contains treating records developed by Dr. Banda clearly showing that a treating relationship with plaintiff existed.  The Commissioner appears to concede this point and, indeed, the record contains treating records establishing a treating relationship between Dr. Banda and plaintiff.  AT 445-50.  However, the ALJ's error was harmless because the ALJ provided additional specific and legitimate reasons for rejecting Dr. Banda's that, for the reasons discussed below, would have been sufficient to reject Dr. Banda's treating opinion even had the ALJ correctly identified it as such.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security

1   cases); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's

2   decision on account of an error that is harmless"); Graham v. Astrue, 385 F. App'x 704, 706 (9th

3   Cir. 2010) (unpublished) (citing Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)) ("The

4   ALJ erroneously questioned whether Dr. Nelson was a treating source, but the error was harmless

5   because the ALJ nonetheless applied the correct legal standard.").

6          First, the ALJ correctly determined that Dr. Banda's January 4, 2013 opinion that plaintiff

7   could not work was not entitled to any weight because it opined on whether plaintiff was totally

8   disabled within the meaning of the Act, which was a determination exclusively reserved to the

9   ALJ.  Allen, 498 Fed. App'x at 696.  Furthermore, with regard to Dr. Banda's April 4, 2013

10  functional opinion, the ALJ provided multiple specific and legitimate reasons for finding that it

11  was entitled to no weight.  In particular, the ALJ appropriately determined that the limitations Dr.

12  Banda opined were so extreme as to conflict with plaintiff's own subjective statements regarding

13  her ability to function.  Indeed, Dr. Banda opined that plaintiff could walk and/or stand for a total

14  of zero hours, and could sit for a total 10 to 15 minutes, in an 8-hour workday, while plaintiff's

15  own reports and testimony suggest that plaintiff was not so functionally limited.  See AT 242-49.

16  Furthermore, Dr. Banda opined that plaintiff's impairments caused her to have a number of

17  environmental restrictions, none of which were reflected in either plaintiff's own statements or

18  anywhere else in the record.

19         The ALJ also properly rejected Dr. Banda's opinion that plaintiff had extreme functional

20  limitations because it was not supported by any of the objective medical evidence in the record

21  and was in direct conflict with the examination findings and opinion of examining physician Dr.

22  Ali.  To be sure, plaintiff's treatment notes from throughout the relevant period do not provide

23  support for the extreme limitations Dr. Banda opined, see, e.g., AT 382-89, 392-98, 445, and Dr.

24  Ali independently examined plaintiff and opined limitations that were both far less restrictive than

25  those Dr. Banda opined and more in line with the objective medical evidence in the record,

26  compare AT 432-47 with AT 442.

27         In sum, all of these reasons provided by the ALJ were specific and legitimate, were

28  supported by substantial evidence from the record, and would have been sufficient grounds for

13

1   completely discounting Dr. Banda's opinions had the ALJ properly acknowledged him as one of

2   plaintiff's treating physicians.[4] See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195

3   (9th Cir. 2004) (upholding ALJ's rejection of treating physician's opinion "because it was in the

4   form of a checklist, did not have supportive objective evidence, was contradicted by other

5   statements and assessments of [the claimant's] medical condition, and was based on [the

6   claimant's] subjective descriptions of pain"); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.

7   2001) (holding that the ALJ properly discounted a treating physician's functional

8   recommendations that "were so extreme as to be implausible and were not supported by any

9   findings made by any doctor," including the treating physician's own findings).  Accordingly, the

10  ALJ's sole error in considering Dr. Banda's opinion was harmless and remand is not warranted

11  on that basis.

12         D.      The ALJ's Adverse Credibility Determination Regarding Plaintiff's Testimony

13                 was Sufficiently Supported

14         Next, plaintiff argues that the ALJ erred by determining that plaintiff's testimony

15  regarding the intensity, persistence, and limiting effects of her symptoms was not entirely

16  credible.  This argument is not well taken.

17         The ALJ determines whether a disability applicant is credible, and the court defers to the

18  ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

19  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

20  explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

21  Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

22  supported by "a specific, cogent reason for the disbelief").

23         In evaluating whether subjective complaints are credible, the ALJ should first consider

24  objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

25  344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

26

---

[4] The court notes that the ALJ provided additional reasons for rejecting the opinion of Dr. Banda.
27  AT 29.  The court declines to discuss these additional reasons in detail as it finds that the ALJ's
    reasons discussed above were sufficient by themselves to support the ALJ's conclusion regarding
28  Dr. Banda's opinion.

then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant non-exertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ provided the following reasons in support of his adverse credibility determination:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained hereafter.
>
> First, these allegations are inconsistent with the clinical indications showing that the claimant's condition is well controlled.  Indeed, the claimant testified at [the] hearing that her diabetes is controlled with medications and her pain medications are helpful in controlling her pain.  Treatment records and blood tests reveal no damages to her kidneys, eyes, or heart due to diabetes.  Consultative examination revealed good range of motion in her joints and negative straight leg raises.  She was able to take her shoes off and put them on.  She was able to sit comfortably and change positions without difficulty.  Her gait was normal and she was able to

hop and squat.  Motor strength, sensation and reflexes were all intact.  Similarly, orthopedic evaluation also found good bilateral strength of the hands without swelling or atrophy.  Neurovascularity was intact except for subjective complaints of decreased sensation.

Second, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.  Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature.  Virtually all treatment has been rendered by a general practitioner.  The claimant has not required ongoing specialty care from an endocrinologist, orthopedist, or neurologist.  She has not required any nerve conduction studies or surgeries.  She has not required physical therapy, chiropractic adjustments, steroid injections, use of a TENS unit, pain management treatment, or any other alternative measure to control her symptoms.  The claimant's lack of treatment suggests that her impairments are not as disabling as she alleges.

Third, the claimant has made inconsistent statements about her functioning and limitations.  For example, the claimant testified that she cannot sit for any length of time due to her pain and numbness.  However, she previously reported that she must "sit in chair for an hour to bend back" and further reported that she spends her days "sitting to watch TV."  Although the claimant testified that she does no cooking, cleaning or shopping, she previously reported that she is able to do the laundry and cook simple foods that are easy to prepare.  She reported she is able to shop for groceries with help from her daughters to pack, unload and push the cart.  Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.

Finally, these allegations are inconsistent with the medical opinions that show the claimant has considerable work related abilities despite her impairment.  Consultative internist Shahid Ali, MD opined that the claimant could perform light exertional work with occasional postural activities.

AT 27-28 (citations to the record omitted).  As discussed below, these were clear and convincing

reasons for discounting plaintiff's testimony that were supported by substantial evidence from the

record.

    First, the ALJ determined that plaintiff's impairments were well controlled with

medication. This was a clear and convincing reason for discounting plaintiff's subjective claim

that her impairments caused her to be disabled.  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d

1001, 1006 (9th Cir. 2006) (a condition that can be controlled or corrected by medication is not

disabling for purposes of determining eligibility for benefits under the Act).  Furthermore, as the ALJ highlighted in his decision, there was substantial evidence in the record to support this reasoning.  For instance, plaintiff's medical records show that her diabetes was well controlled with medication such that she had no damage to her kidneys, eyes, or heart.  See AT 342-45, 382-403.  Furthermore, plaintiff herself stated during the hearing that her pain medications helped to manage her pain to a point, AT 64, and Dr. Ali's medical findings demonstrate that she was able to get on and off the examination table, sit comfortably, and change positions without difficulty, had a normal gait, had negative strait leg raises, and was able to hop and squat without exhibiting pain, AT 343-45.  This evidence supports the ALJ's determination that plaintiff's impairments caused fewer limitations on her functional capacity than what she alleged.  Accordingly, the ALJ did not err in relying on this reasoning to discount plaintiff's testimony.

Similarly, the ALJ also properly determined that the relatively conservative treatment plaintiff received for her allegedly disabling impairments undermined her credibility.  See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  The record demonstrates that plaintiff did not receive any treatment for her impairments beyond medication and nutrition counseling for weight loss, and while bariatric surgery was recommended, she did not follow through with that recommended treatment.  E.g., AT 342, 386, 388, 390-91, 396-97, 399, 445.  Given this evidence, the ALJ properly determined that plaintiff's conservative treatment undermined her subjective complaints regarding the extent of the limitations and pain caused by her impairments.

The ALJ further properly determined that plaintiff's testimony regarding the degree of her impairments was not fully reliable because it was inconsistent with her earlier written statements concerning her daily activities.  See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are

any conflicts between your statements and the rest of the evidence . . . .")  Indeed, plaintiff

testified during the administrative hearing that she could not sit for any specific length of time,

AT 63, but earlier reported that she sat "a lot," daily had "to sit in a chair for an hour to bend

back," and that she sat "for most of the day," AT 242.  Furthermore, plaintiff testified that she

was unable to do any cooking, cleaning, or shopping, AT 64-65, but earlier reported that she did

laundry, shopped for groceries once a week for about two hours at a time with the assistance of

her daughters, and played with her kids once a week, AT 244-46.  "Even where [the claimant's]

activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's

testimony to the extent that they contradict claims of a totally debilitating impairment."  Molina v.

Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012).  Accordingly, the ALJ properly relied on plaintiff's

prior inconsistent report regarding her ability to perform certain daily activities to determine that

plaintiff's claims of disabling symptoms were not fully credible.  See Berry v. Astrue, 622 F.3d

1228, 1235 (9th Cir. 2010) (upholding ALJ's determination that the activities plaintiff reported in

his activity questionnaire undermined his credibility because they suggested a greater functional

capacity than what plaintiff alleged through his hearing testimony).

     Finally, the ALJ discounted plaintiff's testimony because it conflicted with the medical

evidence in the record.  This too was a factor the ALJ was permitted to consider when assessing

plaintiff's credibility.  See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot

form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his

credibility analysis.").  As the ALJ highlighted in his opinion, examining physician Dr. Ali's

opinion that plaintiff was capable of performing light work with some additional postural

limitations undermined plaintiff's allegations that she was completely disabled.  AT 28.  The ALJ

properly gave great weight to Dr. Ali's opinion for the reasons discussed above and was

permitted to rely on the fact that it indicated that plaintiff had greater functional capacity than she

alleged as a factor in favor of the ALJ's adverse credibility determination.

     In sum, the ALJ gave multiple clear and convincing reasons for finding plaintiff's

testimony less than fully credible that were supported by substantial evidence from the record.

Accordingly, the ALJ's adverse credibility determination was not made in error.

1    E.    The ALJ did not err in Discounting the Third Party Report of Plaintiff's

2          Daughter

3          Finally, plaintiff argues that the ALJ erred in discounting the third party report of

4    plaintiff's daughter that supported plaintiff's allegations that her impairments rendered her

5    disabled.

6          "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects

7    ability to work is competent evidence, and therefore cannot be disregarded without comment."

8    Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915,

9    918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's

10   symptoms and daily activities are competent to testify to condition).  "If the ALJ wishes to

11   discount the testimony of the lay witnesses, he must give reasons that are germane to each

12   witness."  Dodrill, 12 F.3d at 919.  Nevertheless, the ALJ is not required "to discuss every

13   witness's testimony on a individualized, witness-by-witness basis."  Molina v. Astrue, 674 F.3d

14   1104, 1114 (9th Cir. 2012).  Indeed, while the applicable regulations require "the ALJ to consider

15   testimony from family and friends submitted on behalf of the claimant," they "do not require the

16   ALJ to provide express reasons for rejecting testimony from each lay witness."  Id. (citing 20

17   C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3)).  "Rather, if the ALJ gives germane reasons for

18   rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting

19   similar testimony by a different witness."  Molina, 674 at 1114.

20         When the ALJ provides clear and convincing reasons for discounting a claimant's

21   testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the

22   ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for

23   rejecting the third-party lay witness's testimony.  Valentine v. Comm'r Soc. Sec. Admin., 574

24   F.3d 685, 694 (9th Cir. 2009); see also Molina, 674 at 1114.  Furthermore, even when the ALJ

25   errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is

26   harmless if that layperson's testimony largely reflects the limitations described by the claimant

27   and the ALJ provides clear and convincing reasons for discounting the claimant's testimony,

28   because the layperson's testimony in such a circumstance is "inconsequential to the ultimate

1   nondisability determination in the context of the record as a whole."  Molina, 674 F.3d at 1122

2   (quotation marks omitted).

3         Here, the ALJ discounted plaintiff's daughter's report both because plaintiff's

4   daughter was "not an acceptable medical source" and because, similar to plaintiff's own

5   testimony, it was "not consistent with the preponderance of the opinions and observations

6   by medical doctors in this case."  AT 30.  The ALJ's reasoning based on the fact that

7   plaintiff's daughter was not an acceptable medical source was not a germane reason for

8   discounting her report because such testimony by its very nature asks for a lay opinion.

9   See 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4) (defining a claimant's relatives as an

10  "other non-medical source" for purposes of determining the severity of a claimant's

11  impairments).  However, this error was harmless because the ALJ's other reason for

12  discounting plaintiff's daughter's report, that it was contradicted by the medical evidence

13  in the same way that plaintiff's allegations were, was a germane reason.  As discussed

14  above with regard to plaintiff's testimony, Dr. Ali opined that plaintiff could perform light

15  work with some additional postural limitations and plaintiff's treating and examining

16  records generally show that she was more functionally capable than what both plaintiff

17  and her daughter alleged.

18        Moreover, plaintiff's daughter's statements essentially echoed plaintiff's own

19  testimony and the ALJ already provided specific, clear and convincing reasons for

20  discounting plaintiff's testimony, which are equally germane to this third-party testimony.

21  See Molina, 674 F.3d at 1122 (quoting Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir.

22  2011)) ("[A]n ALJ's failure to comment upon lay witness testimony is harmless where

23  'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also

24  discredits [the lay witness's] claims.'").  Accordingly, the ALJ did not err in considering

25  the third party lay witness report of plaintiff's daughter.

26  V.    CONCLUSION

27        For the reasons stated herein, IT IS HEREBY ORDERED that:

28        1.  Plaintiff's motion for summary judgment (ECF No. 14) is denied;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 21) is granted; and

3.  Judgment is entered for the Commissioner.

Dated:  January 21, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 rodriguez0231.ss